FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 7 2017

JAMES W. McCORMACK, CLERK
By: _____ 48.6160    DEP CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

STATE AUTO PROPERTY &
CASUALTY INSURANCE COMPANY,

    **PLAINTIFF,**

**VS.**

NO. 4:17 cv 129 - JLH

**RAY LATTURE,**

This case assigned to District Judge Holmes
and to Magistrate Judge _____ Ray

    **DEFENDANT.**

## COMPLAINT

COMES NOW, Plaintiff State Auto Property & Casualty Company, in support of its Complaint for damages from fraudulent conduct of the Defendant and shows:

Plaintiff, State Auto Property & Casualty Insurance Company ("State Auto"), for its cause of action against Ray Latture ("Latture") states as follows:

1.    Jurisdiction in this matter is based upon diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1).

### PARTIES

2.    Plaintiff State Auto Property & Casualty Insurance Company is a corporation organized under the laws of Iowa with its principal place of business located at 518 Broad Street, Columbus, Ohio 43215.

3.    To the best of Plaintiff's information and belief, Defendant Ray Latture is a resident of Arkansas with an address of 612 Webb Hill Road in McRae, Arkansas 72102.

4.    Venue is appropriate under 28 U.S.C. § 1391 because State Auto's principal place of business is in Ohio, and Defendant Latture is a resident of White County, Arkansas, where the events concerning this dispute occurred.

5.    Based on the improper acts of Defendant Latture averred in this Complaint, State Auto asserts Arkansas Code Annotated § 16-56-120 as relevant to this cause of action.

## FACTS

6.    State Auto incorporates all previous Paragraphs by reference as though stated verbatim in this allegation.

7.    State Auto issued Policy Number HAR 0031589 01 effective from August 18, 2010 to August 18, 2011.  The policy is a contract for homeowner's insurance coverage for a home owned by Ray Latture identified in the policy as 799 Shiloh Road, Beebe, Arkansas 72012.   The Policy is Exhibit 1 to this Complaint.

8.    Policy Number HAR 0031589 01 contains the following pertinent policy language (among other pertinent language):

SECTION 1 – EXCLUSIONS [1]

A.  We do not insure for loss caused directly or indirectly by any of the following: Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.......

......

5.  Neglect

---

[1] Policy – Exhibit 1 – Page 10 of 20

Neglect means neglect of an insured to use all reasonable means to save and preserve property at and after the time of the loss.

......

8. Intentional Loss

Intentional Loss means any loss arising out of any act an insured commits or conspires to commit with the intent of causing a loss.  In the event of such loss, no "insured" is entitled to coverage

SECTION 1 – CONDITIONS [2]

......

B. Duties after Loss

.....

9. Send to us ... your sworn proof of loss which sets forth to the best of your knowledge, information, and belief: (a.) the time and cause of the loss.

Q.    Concealment or Fraud [3]

We provide coverage to no insureds under this policy if, whether before or after a loss, an insured has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements.

SECTION II – CONDITIONS [4]

---

[2] Policy – Exhibit 1 – Page 11 of 20
[3] Policy – Exhibit 1 – Page 14 of 20
[4] Policy – Exhibit 1 – Page 18 of 20

3

.....

C. Duties After "Occurrence" [5]

   .... We will have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to [State Auto].

   1. Give written notice .... Which sets forth .... (b.) Reasonably available information on the time, place and circumstances of the occurrence.

......

J. Concealment or Fraud [6]

We do not provide coverage to an insured who, whether before or after a loss, has:

   1. Intentionally concealed or misrepresented any material fact or circumstance;

   2. Engaged in fraudulent conduct; or

   3. Made false statements relating to this insurance.

9.    On July 24, 2011, Defendant Latture owned his residence and personal property therein located at 799 Shiloh Road, Beebe Arkansas 72012.

10.    On January 31, 2012, Defendant Latture executed a "Sworn Statement in Proof of Loss" ("Proof of Loss") to State Auto.   The Proof of Loss is Exhibit 2 to this Complaint.

11.    In the Proof of Loss, Defendant Latture swore a fire loss occurred at 799 Shiloh Road on July 24, 2011 at "10-12pm". (Exhibit 2.)  In the Proof of Loss, Latture

---

[5] Policy – Exhibit 1 – Page 18 of 20
[6] Policy – Exhibit 1 – Page 19 of 20

swears, among other content, that the "loss did not originate by any act, design, or procurement on the part of your insured, or this affiant."

12.     In the Proof of Loss, Latture swears to a statement of the actual cash value of the loss ($372,850.00) and the loss and damage amount ($453,442.25). (Exhibit 2.)

13.     Concerning the fire loss claim, on February 8, 2012, Defendant Latture provided sworn testimony to State Auto in the form of an Examination Under Oath ("EUO") transcribed by a certified court reporter.

14.     In the same EUO Defendant Latture provided false testimony concerning his conduct related to the claimed loss.   In particular, he stated the fire originated when he "was going to light a candle and the next thing [he knew] there's a fire on the bedspread."   He was going to light it "with a piece of paper" he had lit with a lighter (while his Wife was in a bathroom or a closet) but the candle he intended to light wasn't there.   He thought he had extinguished the flame on the lit "piece of paper" but saw a patch of fire on the bed.

15.     Defendant Latture's then-Wife, Jennifer Kay Latture, incurred burns from the fire and was hospitalized for approximately three months for treatment (including surgery) from the burns.

16.     At the time of the EUO, State Auto did not know Latture's EUO testimony concerning the origin of the fire was false and a misrepresentation.   Much later State Auto learned Latture intentionally threw lit objects onto to the bed while his Wife was under the covers with the intent to harm her.   Latture misrepresented and lied in his EUO statements that he did not know how the fire started and that he had no opportunity to report the fire to the fire department.

5

17.    On June 3, 2016, Jennifer Latture provided a statement to Detective Donnie D. Manues of the White County Sheriff's Department. On the date of the fire, Jennifer Latture repeated to Defendant Latture she wanted a divorce; the couple argued; Defendant Latture told her she would never get a divorce from him. Defendant Latture woke Jennifer Latture and threw a lit candle and a lit piece of paper on a bed occupied by Jennifer Latture as she lay under the covers of a bed; the covers ignited; she incurred burns, and cried for help. She started to black-out in the yard when Defendant Latture's son (her stepson) Charles Ray Latture, and two of his friends, Jesse Wil Nethery and Cody Thompson, pulled up in a vehicle. Defendant Latture, Charles Ray, Jess, Cody, and Jennifer Latture all drove/rode to White County Hospital in Charles Ray's vehicle. Jennifer Latture was eventually transported by helicopter to Arkansas Children's Hospital where she was treated for severe burns to 50-65% of her body over three months. No person in the vehicle called the fire department to report the fire.

18.    Defendant Latture told Jennifer Latture that he told the insurance company he had accidentally dropped a candle on the bed because a lawyer told him he could still get coverage if an accident occurred.

19.    On or about July 6, 2016, Jennifer Latture provided a sworn statement to Gary Ingle of State Auto. Defendant Latture had committed verbal, emotional, intimidation, and physical abuse toward Jennifer Latture during their marriage. After they married Jennifer Latture learned Defendant Latture was violent, controlling, possessive, and an alcoholic. Jennifer Latture did not report pre-fire domestic incidents to law enforcement because she believed Defendant Latture would harm her. After Defendant Latture threw the candle and the lit paper on Jennifer Latture as she lay

6

under bed covers 7, her clothes caught fire; she was burning, and, with no assistance from Defendant Latture, ran outside to roll in the grass.  The bedroom and the house caught fire.    Defendant Latture refused to get help for his Wife or concerning the fire. Charles Ray Latture offered to call for help but Defendant Latture told his son not to report the fire.  Charles Ray and his friends all had cell phones as they drove Jennifer Latture to the White County Hospital.

20.    During Jennifer Latture's three month hospitalization, Defendant Latture would not leave her side and would not allow her to speak to others.   Defendant Latture ordered her to adopt the story that she did not know how the fire started and that she went back inside the house after she went to the yard.  Jennifer Latture was afraid not to adopt his false story because she feared Defendant Latture would kill her if she did not adopt the story.

21.    Among other lies, Latture misrepresented in his EUO what started the fire and how his Wife came to incur burns from the fire.

22.    Among other lies, Latture misrepresented in his EUO that he was not able to call the fire department or law enforcement to report the fire.

23.    Among other lies, Latture misrepresented in his EUO that relevant witnesses other than his son were present soon after the fire.

## FRAUD AND BREACH OF CONTRACT

24.    State Auto incorporates all previous Paragraphs by reference as though stated verbatim in this allegation.

25.    The actions of Defendant Latture constitute fraud and breach of contract.

---

[7] As described in Paragraph 17 of this Complaint.

26.    State Auto relied on Defendant Latture's fraudulent representations in the sworn Proof of Loss (Exhibit 2) to tender $357,038.08 to Defendant Latture as coverage under State Auto Policy Number HAR 0031589; Defendant Latture accepted the tender knowing of his fraudulent representations in the Proof of Loss.

27.    State Auto relied on Defendant Latture's fraudulent representations in the February 2, 2012 EUO, to tender $357,038.08 to Defendant Latture as coverage under State Auto Policy Number HAR 0031589; Defendant Latture accepted the tender knowing of his fraudulent representations in the EUO.

28.    As described in this Complaint, concerning the cause of his fire loss, Defendant Latture made false representations of material fact to State Auto and representatives of State Auto. The false representations are acts of fraud and constitute breach of the insurance contract.

29.    Defendant Latture knew his written and oral statements to State Auto and representatives of State Auto about the cause of the fire and his conduct in relation to the fire were false when he made the representations. The conduct is/was fraud and constitute breach of the insurance contract.

30.    Defendant Latture knew State Auto relied on his written and oral statements to State Auto and representatives of State Auto about the cause of the fire and his conduct in relation to the fire when State Auto paid insurance coverage to Latture. The conduct is/was fraud and constitute breach of the insurance contract.

31.    Defendant Latture had/has absolute personal knowledge that oral and written representations he made to State Auto in pursuit of insurance coverage for his loss about the fire were intentional, false, and misrepresentations.

8

32.     Defendant Latture had/has absolute personal knowledge that if he did not conceal the true origin of the fire loss and conceal the entire truth about his conduct in the fire he would not receive insurance coverage and would thereby be denied financial gain.

33.     Defendant Latture had/has absolute knowledge that he had not met the conditions of the insurance contract when he accepted coverage payment/financial gain under policy # HAR 0031589 01.

34.     In the process of making a claim for insurance coverage under State Auto policy #   HAR 0031589 01 Defendant Latture had the specific intent to induce action or inaction by State Auto and knew State Auto was relying on Latture's representations when State Auto paid his claim under policy # HAR 0031589 01.

35.     Defendant Latture intentionally, dishonestly, fraudulently, and deceitfully (1) hid/concealed his conduct in the origin of the fire that destroyed his dwelling, (2) hid/concealed his conduct in failing to timely report the fire and mitigate the loss, and (3) hid, concealed, and failed to provide names of relevant witnesses of the fire – all for his personal advantage and gain.   The Conduct is/was fraudulent and malicious.   The Conduct is/was reprehensible.   The Conduct is/was a fraudulent breach of conditions to the contract of insurance.

36.     Defendant Latture violated Arkansas Code Annotated §23-66-502(a), a statute in effect at the time of the events described in this Complaint.

**DAMAGES**

37.     State Auto incorporates all previous Paragraphs by reference as though stated verbatim in this allegation.

38.    State Auto incurred "out-of-pocket" compensatory liquidated damages of $357,038.08 including but not limited to its payment of an otherwise uncovered loss – the loss of Defendant Latture's dwelling and personal property in a fire.

39.    State Auto incurred compensatory actual damages including but not limited to the incurrence of "out-of-pocket" expenditures in the amount of $41,101.60 in the necessary processing of an uncovered loss – the loss of Defendant Latture's dwelling and personal property in a fire.

40.    For restoration to its position prior to Defendant Latture's fraud, State Auto prays for compensatory damages as relief for its actual losses sustained including but not limited to the damages averred in Paragraphs 38 and 39 of this Complaint.

41.    State Auto prays for the maximum civil penalty according to Arkansas Code Annotated §23-66-512.

42.    State Auto prays for punitive damages to be determined by the trier of fact because Defendant Latture knew or ought to have known that his conduct would result in damages to State Auto but he intentionally, maliciously, and fraudulently continued his conduct with a goal of financial gain and to conceal other egregious conduct by him.

43.    State Auto prays for all costs, attorney fees, and expenses incurred in the prosecution of this cause of action.

44.    State Auto demands a jury to try this cause of action.

ALL THINGS CONSIDERED, State Auto prays this Court to award it appropriate compensatory, statutory, and punitive damages arising from the acts described in this Complaint as well as attorney's fees and all costs of this cause of action and any other relief to which it might be entitled.

Respectfully submitted,

**McNABB, BRAGORGOS,
BURGESS & SORIN, PLLC**

By: _____
PAM WARNOCK BLAIR
TN #10407 AR#2014121
Attorney for Plaintiff
81 Monroe, Sixth Floor
Memphis, Tennessee 38103
Telephone: (901) 624-0640
Fax: (901) 624-0650
pblair@mbbslaw.com

11

MOBTOP    HAR 0031589 01 20100712  WFS LATT HP ' R    03INSU0001587 072012

# STATE AUTO®
## Insurance Companies

POLICY NUMBER
HAR 0031589 01

POLICY EFFECTIVE:
08/18/10

33

INDEPENDENT AGENT

RAY LATTURE
799 SHILOH RD
BEEBE, AR                    72012

INSURANCE MART INC
PO BOX 8
JACKSONVILLE, AR           72078
PHONE:( 501) 982-1505

Attached is your policy and/or any policy changes. Please contact your agent if you have any questions.

Information about your coverages and any applicable special discounts is listed on the attached Declaration page(s). Any new contracts and policy conditions also are attached.

The State Auto Insurance Companies and your independent agent strive to provide overwhelming service to you. Please let us know how we can best serve your needs.

```
*** SEE OTHER SIDE FOR CLAIMS CONTACT INFORMATION ***
*** SEE OTHER SIDE FOR IMPORTANT INFORMATION ABOUT YOUR POLICY ***
```

## POLICY INFORMATION

-----    PREMIUM TOTALS    -----

HAR0031589 0107
RAY LATTURE
DIRECT BILL INSURED FULL PAY

00009903003158900100001980000000000

TOTAL PREMIUM........... $1,614.00

THANK YOU FOR LETTING US SERVE
YOUR INSURANCE NEEDS

ENCLOSED DOCUMENTS ARE POLICY
INFORMATION ONLY

YOUR BILL WILL BE SENT SEPARATELY,
IF NEEDED

EXHIBIT
1

STMTFRVI

C025037   Printed
07/13/10   04:15:59

MOBTOP   HAR 0031589 01 20100712 WFS LATT HP · R   03INSU0001587 072012

**STATE AUTO®**
Insurance Companies

POLICY   NUMBER
HAR 0031589 01

TO FILE A CLAIM:
1) CALL INSURANCE MART INC AT (501)982-1505, OR;
2) CALL STATE AUTO AT 1-800-766-1853, OR;
3) CONTACT STATE AUTO AT WWW.STATEAUTO.COM

**DID YOU KNOW. . . . . .**

Your State Auto Homeowner policy includes at no additional cost, IDENTITY FRAUD EXPENSE COVERAGE - see the endorsement in your policy or call your agent noted above for more information.

Also, to State Auto Homeowner policyholders, we are pleased to make available to you, free of charge, an advocate claims settlement service - someone to assist you with the steps needed if you become a victim of identity fraud. See the enclosed stuffer or call your agent noted above.

More information is also available on our website at WWW.STATEAUTO.COM.

FI2653 (05/06)

MOBNLOGO HAR 0031589 01 20100712  WFS LATT HP ' R    03INSU0001587 072012

POLICY NUMBER: <u>HAR 0031589 01</u>

# NOTICE OF POLICIES AND PRACTICES OF THE DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

The State Auto Insurance Companies are required by federal statute--specifically, the Gramm Leach Bliley Act--to provide you with certain information about our practices regarding the nonpublic, personal information we obtain from, and about, you in the ordinary course of business. Our practices of information-gathering in order to provide your personal insurance are usual and appropriate and done in an acceptable manner for the purposes of insurance underwriting and reinsurance.

We collect the following categories of nonpublic, personal information in the normal course of business:

* Information we receive from you on applications or other forms, such as social security numbers;

* Information about your transactions with us, our affiliates, and others, such as arising from any claims you have presented or your coverage with an affiliate of ours;

* Information we receive from a consumer-reporting agency, including credit scores, motor vehicle records, loss history information, and prior insurance information.

We may disclose any of the nonpublic, personal information you share with us to third parties who help us perform our business function of underwriting and pricing your insurance, settling claims, and otherwise servicing you and your policy(ies). This would include the following types of nonaffiliated entities: consumer-reporting agencies, insurance adjusters, rating bureaus, insurance department regulators, insurance agencies, property inspectors, and other insurance support organizations. The law permits disclosures to the entities described here, and we only disclose your nonpublic, personal information as permitted by law.

We may also share with our affiliates all of the information that we collect to conduct our business, to provide our customers with the best possible products and services and for other purposes.

If you are a new customer and prefer that we not share certain information with our affiliates, you can opt out of this information-sharing by completing the request at the bottom of this notice.

**SEE NEXT PAGE**

C02353D   Printed
07/12/10D  01:15:59

MOBNLOGO HAR 0031589 01 20100712 WFS LATT HP * R    03INSU0001587 072012

If you are an existing customer and have already told us your sharing preference, no action is needed unless you want to change your information-sharing preference. To change your preference at any time, also complete the request at the bottom of this notice.

An opt-out of affiliate-sharing will not apply: to information about transactions or experiences between you and our affiliates or us; to information provided to affiliates that provide services to us or on our behalf; or to other information disclosed as permitted by law. For example, an opt-out will not apply to information about your transactions with us (such as name, address, and payment history) or your experiences with us (such as your claim activity).

The election will remain effective until you revoke it in writing as long as you continue to have a relationship with us. If your present relationship with us terminates (that is, if you become a former customer), your request will continue to apply to information we have collected while you were our customer until you revoke it in writing. If there is more than one named insured (any named insured can request that we not share information), the request will apply to all named insureds on the policy. We will process your opt-out request as soon as reasonably practicable after we receive it.

If you choose this opt-out option, please understand that we may not be able to provide the best and fastest service for you or be able to advise you of products and services that may be available.

In addition, we do not disclose nonpublic, personal information about former customers except as permitted by law.

State Auto seeks to maintain the confidentiality of your nonpublic, personal information. State Auto intends for its employees to access customers' and consumers' nonpublic, personal information only in the course of their servicing our products. We notify each employee of our strict employment policy against any employee accessing nonpublic, personal information for any reasons other than to fulfill their job requirements or as permitted by law. All employees are also required to report to their supervisor any unauthorized use of customers' and consumers' nonpublic, personal information of which any employee becomes aware, so that the matter may be investigated and appropriate disciplinary action taken.

POLICY NUMBER: HAR   0031589     01

Named Insured(s): _____
                        Print Name(s)

☐ I prefer that State Auto not share any of my personal information with any of its affiliated companies.

☐ I wish to change my information-sharing preference and allow State Auto to share my personal information with any of its affiliated companies.

Please mail this election to:

State Auto Insurance Companies
Attention: Information Privacy Practices Contact
518 East Broad Street
Columbus, Ohio  43215

MOBDEC08  HAR 0031589 01 20100712  WFS LATT HP 'R    03 INSU0001587 072012


**STATE AUTO**®
Insurance Companies

RENEWAL DECLARATIONS
HOMEOWNERS POLICY

THIS DECLARATIONS PAGE WITH POLICY FORMS AND ENDORSEMENTS COMPLETES
THE POLICY.  THIS POLICY WILL CONTINUE IN FORCE FOR THE PERIOD
INDICATED UPON VALID PAYMENT OF THE PREMIUM, WHEN DUE.

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE FOLLOWING COMPANY STATE AUTO PROP. & CAS. | AGENCY | PROD |
|---|---|---|---|---|---|
| | FROM | TO | | | |
| HAR 0031589 | 08/18/10 | 08/18/11 | | 1587 | 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| RAY LATTURE<br>799 SHILOH RD<br>BEEBE AR  72012 | INSURANCE MART INC<br>PO BOX 8<br>JACKSONVILLE AR  72078<br><br>TELEPHONE 501/982-1505 |

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

RATING INFORMATION- FORM 3, FRAME, CONSTRUCTED IN 2002, DEFENDER,
   PRIMARY RESIDENCE, PROTECTION CLASS 07, TERRITORY 060,
   FEET FROM HYDRANT 1000, FIRE STATION 5 MILES,
   $1000 SECTION I LOSS DEDUCTIBLE, 1 FAMILY, FIRE DISTRICT.

DUE TO REPAIR AND REPLACEMENT COST INCREASES, SECTION I COVERAGES HAVE BEEN
INCREASED BY  3.6%

COVERAGE AT THE ABOVE DESCRIBED LOCATION IS PROVIDED ONLY WHERE A LIMIT OF
LIABILITY IS SHOWN OR A PREMIUM IS STATED

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A. DWELLING | $217,600 | $1,594.00 |
| B. OTHER STRUCTURES | $21,760 | |
| C. PERSONAL PROPERTY | $152,320 | |
| D. LOSS OF USE | $65,280 | |

SECTION II COVERAGE

| E. PERSONAL LIABILITY | $100,000 EACH OCCURRENCE | |
|---|---|---|
| F. MEDICAL PAY. TO OTHERS - | $1,000 EACH PERSON | |
| | TOTAL BASIC PREMIUM - - - - - - - - - - - - - | $1,594.00 |

ADDITIONAL PREMIUMS

WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW                                    $20.00

                    TOTAL ADDITIONAL PREMIUMS - - - - - - - - - - - - -    $20.00

                    TOTAL ANNUAL PREMIUM - - - - - - - - - - - - -    $1,614.00

PREMIUM BASED ON FAVORABLE LOSS EXPERIENCE

*** YOUR HOMEOWNERS POLICY HAS BEEN DISCOUNTED AS SHOWN BELOW:

YOU HAVE RECEIVED AN AGE OF DWELLING DISCOUNT OF       9%
YOU HAVE RECEIVED AN AUTO/HOME DISCOUNT OF   $281
PROTECTIVE DEVICE CREDIT                                       2%
HOME PURCHASE DISCOUNT                                       8%

POLICY PERIOD- 12-01 AM STANDARD TIME AT THE RESIDENCE PREMISES.

0025044

MOBDEC08   HAR 0031589 01 20100712   WFS LATT HP ·R      03 INSU0001587 072012

# STATE AUTO®
## Insurance Companies

RENEWAL DECLARATIONS
HOMEOWNERS POLICY

THIS DECLARATIONS PAGE WITH POLICY FORMS AND ENDORSEMENTS COMPLETES
THE POLICY.   THIS POLICY WILL CONTINUE IN FORCE FOR THE PERIOD
INDICATED UPON VALID PAYMENT OF THE PREMIUM, WHEN DUE.

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE FOLLOWING COMPANY | AGENCY | PROD |
|---|---|---|---|---|---|
| | FROM | TO | | | |
| HAR 0031589 | 08/18/10 | 08/18/11 | STATE AUTO PROP. & CAS. | 1587 | 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| RAY LATTURE<br>799 SHILOH RD<br>BEEBE AR  72012 | INSURANCE MART INC<br>PO BOX 8<br>JACKSONVILLE AR   72078<br><br>TELEPHONE 501/982-1505 |

MORTGAGEE
ITS SUCCESSORS &/OR ASSIGNS
FIRST SECURITY BANK
PO BOX 1060
BEEBE, AR

72012

ARKANSAS LAW REQUIRES THAT WE INFORM YOU THAT YOUR RENEWAL PREMIUM IS
HIGHER THAN YOUR PRIOR TERM'S PREMIUM.  THERE ARE MANY FACTORS THAT
ARE USED TO CALCULATE YOUR PREMIUM.  ONE OR MORE OF THESE RISK FACTORS
MAY HAVE CHANGED RESULTING IN THE INCREASE.  STATE AUTO ALSO REVIEWS
OUR RATES ANNUALLY TO MAKE SURE THEY ARE ADEQUATE.  THIS RENEWAL POLICY
PREMIUM MAY ALSO REFLECT OUR ANNUAL RATE CHANGE.

FORMS AND ENDORSEMENTS - HO0003 10/00, FI179 10/00, FI256 03/08*, HO0103 02/07,
    AU97 04/04, HO0455 03/03, FI2073 02/06, HO1610 01/09*, HO0416 10/00,
    FI270AR 10/00, FI0495 01/09*, HO0496 10/00.

*** YOU CAN REALIZE SIGNIFICANT PREMIUM REDUCTIONS BY INCREASING THE
DEDUCTIBLE AMOUNT ON YOUR POLICY.  CONTACT YOUR AGENT FOR SPECIFIC DETAILS.**

NO SIGNATURE REQUIRED
- - - - - - - - - - - - - - - - - - -

07/12/10
DATE

**STATE AUTO°** "
Insurance Companies

POLICY   NUMBER

# HOMEOWNERS 3 - SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in **7.** below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money

or other compensation, except the following:

   (1) One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

   (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in a.(1) above; or

   c. Under Section II:

      (1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

      (2) With respect to a "motor vehicle"

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®**
Insurance Companies

POLICY   NUMBER

to which this policy applies:
- (a) Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or
- (b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II**, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:
   - a. The "residence premises";
   - b. The part of other premises, other structures and grounds used by you as a residence; and
     - (1) Which is shown in the Declarations; or
     - (2) Which is acquired by you during the policy period for your use as a residence;
   - c. Any premises used by you in connection with a premises described in **a.** and **b.** above;
   - d. Any part of a premises:
     - (1) Not owned by an "insured"; and
     - (2) Where an "insured" is temporarily residing;
   - e. Vacant land, other than farm land, owned by or rented to an "insured";
   - f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";
   - g. Individual or family cemetery plots or burial vaults of an "insured"; or
   - h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:
   - a. A self-propelled land or amphibious vehicle; or
   - b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   - a. "Bodily injury"; or
   - b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:
    - a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or
    - b. One who performs similar duties elsewhere not related to the "business" of an "insured".

    A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:
    - a. The one family dwelling where you reside;
    - b. The two, three or four family dwelling where you reside in at least one of the family units; or
    - c. That part of any other building where you reside;

    and which is shown as the "residence premises" in the Declarations.

    "Residence premises" also includes other structures and grounds at that location.

**DEDUCTIBLE**
Unless otherwise noted in this policy, the following deductible provision applies:
Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

**SECTION I - PROPERTY COVERAGES**
**A. Coverage A - Dwelling**
1. We cover:
   - a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
   - b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".
2. We do not cover land, including land on which the dwelling is located.

**B. Coverage B - Other Structures**
1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.
2. We do not cover:
   - a. Land, including land on which the other structures are located;
   - b. Other structures rented or held for rental

**HO0003 (10/00) Page 2 of 20**
*//*HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO**
Insurance Companies

POLICY NUMBER

to any person not a tenant of the dwelling, unless used solely as a private garage;

c. Other structures from which any "business" is conducted; or

d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**C. Coverage C - Personal Property**

1. **Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limits For Property At Other Residences**

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit,

notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists. This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

*//*HO0003-200010
Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®** "
Insurance Companies

POLICY    NUMBER

**4. Property Not Covered**
We do not cover:
a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;
b. Animals, birds or fish;
c. "Motor vehicles".
   (1) This includes:
      (a) Their accessories, equipment and parts; or
      (b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.
      The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".
   (2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:
      (a) Used solely to service an "insured's" residence; or
      (b) Designed to assist the handicapped;
d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft. We do cover model or hobby aircraft not used or designed to carry people or cargo;
e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;
f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";
g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I - Property Coverages;
h. Property rented or held for rental to others off the "residence premises";
i. "Business" data, including such data stored in:
   (1) Books of account, drawings or other paper records; or
   (2) Computers and related equipment. We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;
j. Credit cards, electronic fund transfer cards or access devices used solely for

deposit, withdrawal or transfer of funds except as provided in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages; or
k. Water or steam.

**D. Coverage D - Loss Of Use**
The limit of liability for Coverage **D** is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.
1. **Additional Living Expense**
If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.
2. **Fair Rental Value**
If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.
Payment will be for the shortest time required to repair or replace such premises.
3. **Civil Authority Prohibits Use**
If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense and 2. Fair Rental Value above for no more than two weeks.
4. **Loss Or Expense Not Covered**
We do not cover loss or expense due to cancellation of a lease or agreement.
The periods of time under 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use above are not limited by expiration of this policy.
**E. Additional Coverages**
1. Debris Removal
   a. We will pay your reasonable expense for the removal of:
      (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or
      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.
      This expense is included in the limit of

**HO0003 (10/00) Page 4 of 20**
•//•HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®** "

Insurance Companies

POLICY NUMBER

liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

2. **Reasonable Repairs**

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section **I -** Conditions.

3. **Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

*•//•HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®** "
Insurance Companies

POLICY    NUMBER

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss. This coverage is additional insurance. No deductible applies to this coverage.

b. We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in a. above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

**7. Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property

described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph P. Policy Period under Section I - Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage C;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank foundation, retaining wall, bulkhead, pier,

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO** ®
Insurance Companies

POLICY NUMBER

wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I - PERILS INSURED AGAINST**
**A. Coverage A - Dwelling And Coverage B - Other Structures**

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO** ® "
Insurance Companies

POLICY    NUMBER

1. We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

2. We do not insure, however, for loss:
   a. Excluded under Section I - Exclusions;
   b. Involving collapse, except as provided in **E.8. Collapse** under **Section I - Property Coverages**; or
   c. Caused by:
      (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:
         (a) Maintain heat in the building; or
         (b) Shut off the water supply and drain all systems and appliances of water.
         However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.
         For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;
      (2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
         (a) Fence, pavement, patio or swimming pool;
         (b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;
         (c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or
         (d) Pier, wharf or dock;
      (3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;
      (4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days

immediately before the loss. A dwelling being constructed is not considered vacant;
      (5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:
         (a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or
         (b) A storm drain, or water, steam or sewer pipes, off the "residence premises".
         For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or
      (6) Any of the following:
         (a) Wear and tear, marring, deterioration;
         (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
         (c) Smog, rust or other corrosion, or dry rot;
         (d) Smoke from agricultural smudging or industrial operations;
         (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.
         Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
         (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**HO0003 (10/00) Page 8 of 20**
*//•HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO** ®
Insurance Companies

POLICY   NUMBER

(g) Birds, vermin, rodents, or insects; or
(h) Animals owned or kept by an "insured".

**Exception To c.(6)**
Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

(I) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or
(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section **I** - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C - Personal Property**
We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section **I** - Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**
This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.
This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**
This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**
This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.
This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**
a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.
b. This peril does not include loss caused by theft:
(1) Committed by an "insured";
(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;
(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or
(4) That occurs off the "residence premises" of:
(a) Trailers, semitrailers and campers;
(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or
(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**
This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**HO0003 (10/00) Page 9 of 20**
+//+HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®**
Insurance Companies

POLICY    NUMBER

11. **Weight Of Ice, Snow Or Sleet**
This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. **Accidental Discharge Or Overflow Of Water Or Steam**
   a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
   b. This peril does not include loss:
      (1) To the system or appliance from which the water or steam escaped;
      (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;
      (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or
      (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.
   c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.
   d. Section I - Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**
This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**
   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:
      (1) Maintain heat in the building; or
      (2) Shut off the water supply and drain all systems and appliances of water.
      However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.
   b. In this peril, a plumbing system or household appliance does not include a

sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**
This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**
This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I - EXCLUSIONS**
A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**
   Ordinance Or Law means any ordinance or law:
   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I - Property Coverages;
   b. The requirements of which result in a loss in value to property; or
   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.
      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
   This Exclusion A.1. applies whether or not the property has been physically damaged.

2. **Earth Movement**
   Earth Movement means:
   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;
   b. Landslide, mudslide or mudflow;
   c. Subsidence or sinkhole; or
   d. Any other earth movement including earth sinking, rising or shifting;
   caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO**®
Insurance Companies

we will pay only for the ensuing loss.
This Exclusion A.2. does not apply to loss
by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water,
overflow of a body of water, or spray
from any of these, whether or not
driven by wind;

**b.** Water or water-borne material which
backs up through sewers or drains or
which overflows or is discharged from a
sump, sump pump or related equipment;
or

**c.** Water or water-borne material below
the surface of the ground, including
water which exerts pressure on or seeps
or leaks through a building, sidewalk,
driveway, foundation, swimming pool or
other structure;

caused by or resulting from human or animal
forces or any act of nature.

Direct loss by fire, explosion or theft
resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or
other utility service if the failure takes
place off the "residence premises". But if
the failure results in a loss, from a Peril
Insured Against on the "residence premises",
we will pay for the loss caused by that
peril.

**5. Neglect**

Neglect means neglect of an "insured" to
use all reasonable means to save and
preserve property at and after the time of a
loss.

**6. War**

War includes the following and any conse-
quence of any of the following:

**a.** Undeclared war, civil war, insurrection,
rebellion or revolution;

**b.** Warlike act by a military force or
military personnel; or

**c.** Destruction, seizure or use for a military
purpose.

Discharge of a nuclear weapon will be
deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion A.7. pertains to Nuclear
Hazard to the extent set forth in M. Nuclear
Hazard Clause under Section I - Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out
of any act an "insured" commits or con-
spires to commit with the intent to cause a
loss.

In the event of such loss, no "insured" is
entitled to coverage, even "insureds" who
did not commit or conspire to commit the

act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction,
confiscation or seizure of property described
in Coverage **A**, **B** or **C** by order of any
governmental or public authority.

This exclusion does not apply to such acts
ordered by any governmental or public
authority that are taken at the time of a
fire to prevent its spread, if the loss caused
by fire would be covered under this policy.

**B.** We do not insure for loss to property described
in Coverages **A** and **B** caused by any of the
following. However, any ensuing loss to property
described in Coverages **A** and **B** not precluded
by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion
only applies if weather conditions contribute
in any way with a cause or event excluded
in **A**. above to produce the loss.

**2.** Acts or decisions, including the failure to
act or decide, of any person, group, organ-
ization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying,
siting;

**b.** Design, specifications, workmanship, re-
pair, construction, renovation, remodeling,
grading, compaction;

**c.** Materials used in repair, construction,
renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or
off the "residence premises".

## SECTION I - CONDITIONS

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable
interest in the property covered, we will not be
liable in any one loss:

**1.** To an "insured" for more than the amount
of such "insured's" interest at the time of
loss; or

**2.** For more than the applicable limit of
liability.

**B. Duties After Loss**

In case of a loss to covered property, we have
no duty to provide coverage under this policy if
the failure to comply with the following duties
is prejudicial to us. These duties must be
performed either by you, an "insured" seeking
coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund
transfer card or access device company in
case of loss as provided for in **E.6.** Credit
Card, Electronic Fund Transfer Card Or
Access Device, Forgery And Counterfeit
Money under Section I - Property Coverages;

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO**°
Insurance Companies

POLICY NUMBER

4.  Protect the property from further damage. If repairs to the property are required, you must:
    a.  Make reasonable and necessary repairs to protect the property; and
    b.  Keep an accurate record of repair expenses;
5.  Cooperate with us in the investigation of a claim;
6.  Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7.  As often as we reasonably require:
    a.  Show the damaged property;
    b.  Provide us with records and documents we request and permit us to make copies; and
    c.  Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8.  Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
    a.  The time and cause of loss;
    b.  The interests of all "insureds" and all others in the property involved and all liens on the property;
    c.  Other insurance which may cover the loss;
    d.  Changes in title or occupancy of the property during the term of the policy;
    e.  Specifications of damaged buildings and detailed repair estimates;
    f.  The inventory of damaged personal property described in 6. above;
    g.  Receipts for additional living expenses incurred and records that support the fair rental value loss; and
    h.  Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages, stating the amount and cause of loss.

**C. Loss Settlement**

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I - Property Coverages. Covered property losses are settled as follows:

1.  Property of the following types:
    a.  Personal property;
    b.  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

    c.  Structures that are not buildings; and
    d.  Grave markers, including mausoleums;
    at actual cash value at the time of loss but not more than the amount required to repair or replace.
2.  Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:
    a.  If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:
        (1) The limit of liability under this policy that applies to the building;
        (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or
        (3) The necessary amount actually spent to repair or replace the damaged building.
        If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.
    b.  If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:
        (1) The actual cash value of that part of the building damaged; or
        (2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.
    c.  To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:
        (1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**HO0003 (10/00) Page 12 of 20**
•//•HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®** "
Insurance Companies

POLICY NUMBER

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. A service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section I - Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this

**HO0003 (10/00) Page 13 of 20**
•//•HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO** °  "
Insurance Companies

POLICY   NUMBER

policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

   relating to this Insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II - LIABILITY COVERAGES

**A. Coverage E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II - EXCLUSIONS

**A. "Motor Vehicle Liability"**

1. Coverages **E** and **F** do not apply to any

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO**
Insurance Companies

POLICY NUMBER

"motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

　(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

　(2) Rented to others;

　(3) Used to carry persons or cargo for a charge; or

　(4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service an "insured's" residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

　(1) Being used to assist a handicapped person; or

　(2) Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

　(1) Not owned by an "insured"; or

　(2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.;** or

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

　(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

　　(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

　　(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

　　(c) Cross public roads at designated points to access other parts of the golfing facility; or

　(2) A private residential community, including its public roads upon which a motorized golf cart can legally

travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

　(1) Less than 26 feet in overall length; or

　(2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

　(1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

　　(a) 50 horsepower or less and not owned by an "insured"; or

　　(b) More than 50 horsepower and not owned by or rented to an "insured"; or

　(2) One or more outboard engines or motors with:

　　(a) 25 total horsepower or less;

　　(b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

　　(c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

　　(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

　　　(I) You declare them at policy inception; or

　　　(II) Your intent to insure them is reported to us in writing

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®**
Insurance Companies

POLICY NUMBER

within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. This Exclusion **E.2.** does not apply to:

(1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. **Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. **"Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured"; that is not an "insured location";

5. **War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E - Personal Liability**

Coverage **E** does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association,

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®** "
Insurance Companies

POLICY  NUMBER

corporation or community of property owners, except as provided in D. Loss Assessment under Section II - Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the owner-ship, maintenance or use of an "insured location"; or

(2) Where the liability of others is as-sumed by you prior to an "occur-ence";

unless excluded in **a.** above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

a. To repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F - Medical Payments To Others**

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

a. Occurs off the "insured location"; and

b. Does not arise out of or in the course of the "residence employee's" employ-ment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provid-ed under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

3. From any:

a. Nuclear reaction;

b. Nuclear radiation; or

c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II - ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property dam-age" to property of others caused by an "insured".

2. We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I;

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

**HO0003 (10/00) Page 17 of 20**
*//*HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®**
Insurance Companies

POLICY NUMBER

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:
  (1) A "business" engaged in by an "insured";
  (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or
  (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of an "aircraft", hovercraft, watercraft or "motor vehicles".
  This exclusion e.(3) does not apply to a "motor vehicle" that:
    (a) Is designed for recreational use off public roads;
    (b) Is not owned by an "insured"; and
    (c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**
1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:
   a. "Bodily injury" or "property damage" not excluded from coverage under Section II - Exclusions; or
   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:
     (1) Is elected by the members of a corporation or association of property owners; and
     (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.
2. Paragraph I. Policy Period under Section II - Conditions does not apply to this Loss Assessment Coverage.
3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:
   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or
   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.
4. We do not cover assessments charged

against you or a corporation or association of property owners by any governmental body.

**SECTION II - CONDITIONS**
**A. Limit Of Liability**
Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".
Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

**B. Severability Of Insurance**
This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**
In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:
1. Give written notice to us or our agent as soon as is practical, which sets forth:
   a. The identity of the policy and the "named insured" shown in the Declarations;
   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and
   c. Names and addresses of any claimants and witnesses;
2. Cooperate with us in the investigation, settlement or defense of any claim or suit;
3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";
4. At our request, help us:
   a. To make settlement;
   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
   c. With the conduct of suits and attend hearings and trials; and
   d. To secure and give evidence and obtain the attendance of witnesses;
5. With respect to C. Damage To Property Of Others under Section II - Additional

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®** "

Insurance Companies

POLICY  NUMBER

Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person - Coverage F - Medical Payments To Others**

1. The injured person or someone acting for the injured person will:
   a. Give us written proof of claim, under oath if required, as soon as is practical; and
   b. Authorize us to obtain copies of medical reports and records.
2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim - Coverage F - Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.
2. No one will have the right to join us as a party to any action against an "insured".
3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;

relating to this insurance.

**SECTIONS I AND II - CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without

additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or
2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.
   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.
   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
      (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or
      (2) If the risk has changed substantially since the policy was issued.
      This can be done by letting you know at least 30 days before the date cancellation takes effect.
   d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.
3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**HO0003 (10/00) Page 19 of 20**

*//*HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO** ®
Insurance Companies

POLICY NUMBER

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** - Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

    a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

HO0003 (10/00) Page 20 of 20
*//*HO0003-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO**®  "
Insurance Companies

POLICY    NUMBER

# LEAD AND POLLUTION EXCLUSION ENDORSEMENT

The following exclusions are added to the Personal Liability policy exclusions.

This policy does not apply to:

1. Actual or alleged "bodily injury," that would not have occurred in whole or in part but for the direct or indirect ingestion, inhalation or absorption of lead, or lead compounds, in any form.

2. Actual or alleged "property damage" or "personal injury," which would not have occurred in whole or part but results directly or indirectly from lead, or lead compounds, in any form.

3. "Bodily injury," "personal injury" or "property damage" which would not have occurred in whole or part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

4. Any loss, cost or expense arising out of any:

   a. Governmental direction or request, or that of any and all other entities, demand, order or statutory or regulatory requirements that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead, lead compounds or pollutants.

   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitory, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, lead compounds, or pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Exclusion 3 above, does not apply to "bodily injury," "personal injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire at the "insured location." As used here, a hostile fire means one which becomes uncontrollable or breaks out from where it was contained or was intended to be.

**FI179 (10/00)**
*//*FI179-200010



# YOUR HOMEOWNER OPTIONS POLICY

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY**
518 EAST BROAD STREET * COLUMBUS OHIO 43215 * 614-464-5000

**STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY**
1300 WOODLAND AVENUE * WEST DES MOINES IOWA * 50265-0150 * 515-223-9438

CORPORATE OFFICE:
STATE AUTO INSURANCE COMPANIES ▪ 518 EAST BROAD STREET ▪ COLUMBUS, OH 43215-3976 ▪ 614-464-5000

We have caused this policy to be signed by our authorized officers. The Company providing coverage is named on the Declarations.

Secretary

*James A. Yano*

**James A. Yano**

President

*Robert P. Restrepo Jr.*

**Robert P. Restrepo**

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

### YOUR HOMEOWNERS POLICY-QUICK REFERENCE

| HOMEOWNERS POLICY | DECLARATIONS (Pages Numbered Separately) | | | |
|---|---|---|---|---|
| | Your Name | | | |
| | Location of Your Residence | | | |
| | Policy Period | | | |
| | Coverages | | | |
| | Amounts of Insurance | | | |
| | Deductible | Beginning on page | | |
| | | HO0003 (10/00) | HO0004 (10/00) | HO0005 (10/00) | HO0006 (10/00) |

| | | HO0003 (10/00) | HO0004 (10/00) | HO0005 (10/00) | HO0006 (10/00) |
|---|---|---|---|---|---|
| | **AGREEMENT** | 1 | 1 | 1 | 1 |
| | **DEFINITIONS** | 1 | 1 | 1 | 1 |
| **SECTION I** **YOUR PROPERTY** | **COVERAGES** | | | | |
| | Property Coverages | 2 | 2 | 2 | 2 |
| | Loss of Use | 4 | 4 | 4 | 4 |
| | Additional Coverages | 4 | 4 | 5 | 4 |
| | **PERILS INSURED AGAINST** | | | | |
| | Coverage A and/or B | 7 | N/A | 9 | 7 |
| | Coverage C Perils | 9 | 7 | 9 | 7 |
| | **EXCLUSIONS** | 10 | 9 | 10 | 9 |
| | **CONDITIONS** | 11 | 10 | 12 | 10 |
| **SECTION II** **YOUR LIABILITY** | **COVERAGES** | | | | |
| | Personal Liability | | | | |
| | Medical Payments to Others | 14 | 11 | 15 | 12 |
| | **EXCLUSIONS** | 14 | 12 | 15 | 12 |
| | **ADDITIONAL COVERAGES** | 17 | 14 | 18 | 15 |
| | **CONDITIONS** | 18 | 15 | 19 | 16 |
| **SECTION I** **and** **SECTION II** | **CONDITIONS** | 19 | 16 | 20 | 17 |
| **ENDORSEMENTS** | APPLICABLE ONLY IF SPECIFIED ON THE DECLARATIONS PAGE. | | | | |

**STATE AUTO**®

Insurance Companies

POLICY  NUMBER

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS - ARKANSAS

## SECTION I - CONDITIONS

**E. Appraisal** is replaced by the following:

**E. Appraisal**

If you and we fail to agree on the amount of loss, an appraisal of the loss may take place. However, an appraisal will take place only if both you and we agree, voluntarily, to have the loss appraised. If so agreed, each party will choose a competent and impartial appraiser within 20 days after both parties agree. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately state the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. An appraisal decision will not be binding on either party.

Each party will:

1. Pay its own appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

**G. Suit Against Us** is deleted and replaced by the following:

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within five years after the date of loss.

**K. Mortgage Clause**

Paragraph 3. is replaced by the following:

3. If we decide to cancel this policy, the mortgagee will be notified:
   a. At least 10 days before the date cancellation takes effect if:
      (1) We cancel for nonpayment of premium, or
      (2) The policy has been in effect for less than 60 days and is not a renewal with us; or
   b. At least 20 days before the date cancellation takes effect in all other cases.

   If we decide not to renew this policy, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

**R. Loss Payable Clause** is replaced by the following:

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel this policy, that loss payee will be notified in writing.

If we decide to not renew this policy, that loss payee will be notified in writing at least 30 days before the date nonrenewal takes effect. (This is Condition **Q.** in Form HO 00 04.)

## SECTIONS I AND II - CONDITIONS

**C. Cancellation**

Paragraphs **2.c.** and **2.d.** are replaced by the following:

c. When this policy has been in effect for 60 days or more or at any time if it is a renewal with us, we may cancel:
   (1) Upon discovery of fraud or material misrepresentation made by or with the knowledge of the named insured in obtaining or continuing the policy, or in presenting a claim under this policy;
   (2) Upon the occurrence of a material change in the risk which substantially increases any hazard insured against after insurance coverage has been issued;
   (3) If there is a violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property which substantially increases any hazard insured against;
   (4) For nonpayment of membership dues required by us as a condition of the issuance and maintenance of the policy; or
   (5) In the event of a material violation of a material provision of this policy.

   This can be done by letting you know at least 20 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason(s) noted in **2.c.** at anniversary by letting you know at least 20 days before the date cancellation takes effect.

**F. Subrogation** is replaced by the following:

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. However, we will be entitled to a recovery only after an "insured" has been fully compensated for the loss sustained.

*//*HO0103-200702

Copyright, Insurance Services Office, Inc., 2000



POLICY   NUMBER

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph **C.** Damage To Property Of Others under Section II - Additional Coverages.

All other provisions of this policy apply.

**HO0103 (02/07) Page 2 of 2**
*//*HO0103-200702

Copyright, Insurance Services Office, Inc., 2000

**IMPORTANT NOTICE**

If a fire loss occurs, we are required by state law (Arkansas Code 12-13-303) to furnish relevant information relating to the loss to any state or federal law enforcement or other agency that has responsibility for investigation of fires, if:

* The agency requests the information, or
* After investigating the fire, we have reason to believe it was not of accidental origin.

If we provide information to a fire investigation agency, we will:

* Notify you of that action within 90 days; and
* Send you a copy of the report, if an authorized agency commences civil action or criminal prosecution.

Any information furnished to any authorized agency is to be held in confidence by the authorized agency and only released for use in a civil or criminal proceeding as authorized by a court of competent jurisdiction.

**AU97 (04/04) Page 1 of 1**
*//*AU97-200404

# STATE AUTO® "
## Insurance Companies

POLICY NUMBER

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# IDENTITY FRAUD EXPENSE COVERAGE

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

2. "Expenses" means:
   a. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies.
   b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.
   c. Lost income resulting from the time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $200 per day. Total payment for lost income is not to exceed $5,000.
   d. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.
   e. Reasonable attorney fees incurred as a result of "identity fraud" to:
      (1) Defend lawsuits brought against an "insured" by merchants, financial institutions or their collection agencies;
      (2) Remove any criminal or civil judgments wrongly entered against an "insured"; and
      (3) Challenge the accuracy or completeness of any information in a consumer credit report.
   f. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud".

The following Additional Coverage is added under **Section I:**

**IDENTITY FRAUD EXPENSE**

We will pay up to $15,000 for "expenses" incurred by an "insured" as the direct result of any one "identity fraud" first discovered or learned of during the policy period.

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an "insured", is considered to be one "identity fraud", even if a series of acts continues into a subsequent policy period.

This coverage is additional insurance.

**EXCLUSIONS**

The following additional exclusions apply to this coverage:

We do not cover:

1. Loss arising out of or in connection with a "business".
2. "Expenses" incurred due to any fraudulent, dishonest or criminal act by an "insured" or any person aiding or abetting an "insured", or by any authorized representative of an "insured", whether acting alone or in collusion with others.
3. Loss other than "expenses".

**SPECIAL DEDUCTIBLE**

We will pay only that part of the loss that exceeds $250. No other deductible applies to "identity fraud" expenses coverage.

**SECTION I - CONDITION**
**B. Duties After Loss**

The following is added:

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for "expenses" under "identity fraud" coverage.

All other provisions of this policy apply.

**HO0455 (03/03)**
*//*HO0455-200303

ISO Properties, Inc., 2002



POLICY NUMBER

# AMENDMENT OF CANCELLATION PROVISION

**SECTION I AND II - CONDITIONS**

Paragraph **C. 1., Cancellation** is replaced by the following:

   1.  Any "named insured" may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

All remaining cancellation provisions are unchanged.

**FI2073 (02/06)**
*//*FI2073-200602

 **STATE AUTO**® "
Insurance Companies

POLICY  NUMBER

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER EXCLUSION ENDORSEMENT

**SECTION I - EXCLUSIONS**
A.3. Water Damage is replaced by the following:

3. **Water**
   This means:
   a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
   b. Water which:
      (1) Backs up through sewers or drains; or
      (2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;
   c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

   d. Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this Exclusion.

   This Exclusion (A.3.) applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.**, is caused by an act of nature or is otherwise caused.

   This Exclusion (A.3.) applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

   However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.**, is covered.

   All other provisions of this policy apply.

**HO1610 (01/09)**
•//•HO1610-200901

Copyright, Insurance Services Office, Inc., 2008

**STATE AUTO®**
Insurance Companies

POLICY    NUMBER

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

**HO0416 (10/00)**
*//*HO0416-200010

Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO°** "
Insurance Companies

POLICY    NUMBER

# DEFENDER OPTION ENDORSEMENT
### (For use with HO0003 or HO0005 only)

Your Homeowners policy has been broadened substantially by the package of extra coverages included in this form.

### PART A - CHANGE IN DEFINITION
### PERSONAL INJURY LIABILITY

**DEFINITIONS**
The following definition is added:
The definition of "bodily injury" is amended to include personal injury. "Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
5. Oral or written publication of material that violates a person's right of privacy.

**SECTION II - LIABILITY COVERAGES**
**A. Coverage E - Personal Liability**
The following is added to Coverage E - Personal Liability:
**Personal Injury Coverage**
If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:
1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

**SECTION II - EXCLUSIONS**
With respect to the coverage provided by this endorsement, Section II - Exclusions is deleted and replaced by the following:
This insurance does not apply to:
1. "Personal Injury":
   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";
   b. Arising out of oral or written publication of material, if done by or at the direction of an "insured' with knowledge of its falsity;
   c. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
   d. Arising out of a criminal act committed by or at the direction of an "insured";
   e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;
   f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";
   g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".
   This exclusion does not apply to:
   (1) The rental or holding for rental of an "insured location";
      (a) On an occasional basis if used only as a residence;

In Part, Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO** "
Insurance Companies

POLICY    NUMBER

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

h. Arising out of civic or public activities performed for pay by an "insured";

i. To you or an "insured" as defined under Definitions 5.a. or b.;

This exclusion also applies to any claim made or suit brought against you or an "insured";

(1) To repay; or

(2) Share damages with; or

Another person who may be obligated to pay damages because of "personal injury" to an "insured".

j. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

## SECTION II - ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph **D. Loss Assessment** is deleted and replaced by the following:

**D. Loss Assessment**

We will pay up to $1000 for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of "personal injury".

## SECTION II - CONDITIONS

With respect to the coverage provided by this endorsement, Section II - Condition I. Policy Period does not apply and Conditions **A. Limit of Liability, B. Severability Of Insurance** and **C. Duties After "Occurrence"** are deleted and replaced by the following:

**A. Limit Of Liability**

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage E. This limit is the same regardless of the number of "insureds", claims made or suits brought.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

**D. Duties After Offense**

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as practical, which sets forth:

a. The identity of the policy and "named insured";

b. Reasonably available information on the time, place and circumstances of the offense; and

c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the offense;

4. At our request, help us:

a. To make settlement;

In Part, Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO**°''
Insurance Companies

POLICY  NUMBER

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
   c. With the conduct of suits and attend hearings and trials; and
   d. To secure and give evidence and obtain the attendance of witnesses;
5. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

### PART B - MODIFICATIONS TO COVERAGE C
### COVERAGE C LIMIT - 70%

A. **COVERAGE C - Personal Property**. The limit of liability for this coverage, except as otherwise provided in that section, will be no more than 70% of the limit of liability that applies to Coverage **A**.

B. **COVERAGE C - Personal Property - Special Limit of Liability**. Coverages and amounts, under Special Limits of Liability, are amended as follows:

   a. $250 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.
   b. $2,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exist. This limit includes the cost to research, replace or restore the information from the lost or damaged material.
   c. $2,000 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.
   d. $2,000 on trailers or semitrailers not used with watercraft of all types.
   e. 1. We will pay up to $2,000 per article for loss of jewelry, watches, furs, precious stones when loss is caused by theft, misplacing or losing subject to a maximum of $3,000 per occurrence.
      2. However, if loss of jewelry, furs, watches, precious and semi-precious stones is caused by any peril other than theft, misplacing or losing and is not excluded under Section I - Perils or Section I - Exclusion, we will pay the total replacement value of the damaged property. The most we will pay under this provision for any one occurrence is the limit of liability for Coverage C plus $3,000.
   f. Theft of firearms - Remains unchanged.
   g. 1. We will pay up to $3,000 per occurrence for loss to silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware which is caused by theft, misplacing or losing. This includes flatware, hollowware, tea sets, trays and trophies made of, or including, silver, gold or pewter.
      2. However, if loss to silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware is caused by any peril other than theft, misplacing or losing and is not excluded under Section I - Perils or Section I - Exclusions, we will pay the total replacement value of the damaged property. The most we will pay under this provision for any one occurrence is the limit of liability for Coverage C plus $3,000.
   h. Business property on the "residence premises" - Remains unchanged.
   i. Business property away from the "residence premises" - Remains unchanged except for the following:
      When the property used in "business" is away from the "residence premises" and is your "computer equipment", the limit for "computer equipment" will be the total limit that is provided by **h.** for property used in "business" on the "residence premises." This extension of coverage also applies to "business" property that is "computer equipment," and included under item **j.** or **k.** The away from the "residence premises" limit as shown in provisions, **i., j.** and **k.**, would still apply for other property used in "business" away from the "residence premises" per the limit shown in this provision.
      "Computer equipment" means electronic data processing, hardware and related peripheral equipment, including CRT screens, disc drivers, printers and modems; and discs, tapes, wires, records or other software media used with the data processing equipment.
   j. Electronic apparatus and accessories, while in or upon a "motor vehicle" - Remains unchanged except as amended by item **i.**
   k. Electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in  or upon a "motor vehicle" - Remains unchanged except as amended by item **i.**

### SERVICE VEHICLE COVERAGE

Under **Coverage C, Property Not Covered,** Item c. (2) (a) is deleted and replaced by the following:
   c.(2)(a) Used to service an "insured's" residence. However, this exception does not apply to "recreational motor vehicles" unless used solely to service the "residence premises."

**FI270AR (10/00) Page 3 of 8**
*//*FI270AR-200010

In Part, Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO** °"
Insurance Companies

POLICY   NUMBER

A "recreational motor vehicle" as used in this provision is one of the following:
   a. All-terrain vehicle;
   b. Dune buggy;
   c. Golf cart;
   d. Snowmobile; or
   e. Any other motorized land vehicle that is designed for recreational use off public roads.

## PART C - MODIFICATIONS TO COVERAGE D - LOSS OF USE
### ADDITIONAL LIVING EXPENSE/FAIR RENTAL VALUE OPTION

**Part D - Loss of Use** is deleted and replaced by the following:

The limit of liability for Coverage **D** is the total limit for all the coverages that follow.
   1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph **b**. below.

   a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

   2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   Fair Rental Value, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

   3. If a civil authority prohibits you from use of the residence premises as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense or Fair Rental Value loss as provided under **1** and **2** above for no more than two weeks.

   The periods of time under **1, 2** and **3** above are not limited by expiration of this policy.

   We do not cover loss or expense due to cancellation of a lease or agreement.

## PART D - MODIFICATIONS TO ADDITIONAL COVERAGES

**1. Debris Removal**
   Items **b. (3)** and **(4)** are deleted. With respect to fallen trees **(1. b. (3)),** the debris removal provision is amended by deleting the requirement that a fallen tree must cause damage to a covered structure.

**3. Trees, Shrubs and Other Plants**
   We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against: Fire or Lightning; Explosion; Riot or Civil Commotion; Aircraft; Vehicles not owned or operated by a resident of the "residence premises;" Vandalism or Malicious Mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $750 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

**4. Fire Department Service Charge**
   We will pay up to $1,000 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured

In Part, Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®** "

Insurance Companies

POLICY    NUMBER

Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response. This coverage is additional insurance. No deductible applies to this coverage.

6.  **Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money** - Remains unchanged except the limit of liability is increased from $500 to $1,000.

7.  **Loss Assessment** - Remains unchanged except the limit of liability is increased to $5,000.

## PART E - SPECIAL ADDITIONAL COVERAGES

### FREEZER CONTENTS COVERAGE

1.  **SECTION I - EXCLUSIONS,** Exclusion A.4., Power failure is amended as follows: If damage to contents of deep freeze or refrigerated units on the "residence premises" is caused by power failure or mechanical breakdown, and the damage is otherwise excluded under this policy, we will pay for such damage under this endorsement. Our limit of liability for this coverage shall not exceed $1,000 per occurrence. If power failure or mechanical breakdown is known by you, you must use all reasonable means to protect the property covered from further damage or this extension is void.
    A $50 deductible applies to this coverage.

### LOCK REPLACEMENT

2.  We will pay up to $250 for the replacement of locks or cylinders that are:
    a.  Used to lock the dwelling or other structure on the "residence premises"; and
    b.  Replaced due to the theft of keys.
    The $250 limit is the most we will pay in any one loss, regardless of the number of locks or cylinders and no more than $500 will be paid in any one policy term. No deductible applies to this coverage.

### RENTED GOLF CART

3.  Coverage is provided for a rented motorized golf cart while being operated by an "insured" on a golf course or golf premises for golfing purposes. Our maximum limit of coverage under this provision shall not exceed $5,000. No deductible applies to this coverage.

    We do not cover loss or damage caused by wear and tear, gradual deterioration, mechanical breakdown, repair or theft.

### DEDUCTIBLE WAIVER

4.  The Section I deductible shown in the declarations page does not apply to covered property losses of more than $50,000. This provision does not apply to or waive any separate deductible, identified in the declarations, policy or endorsement as being applicable to a specific peril or coverage such as, but not limited to: wind/hail, earthquake and water back-up.

### ARSON, FRAUD AND THEFT REWARDS COVERAGE

5.  If a loss covered under Section I of this policy is caused by arson, fraud or theft, we will pay a reward of up to $1,000 to a "designated person" for information that results in the arrest and conviction of the person(s) committing the arson, fraud or theft, or the return of the stolen property. However, we will pay the least of the following amount:

    a.  The amount equal to the loss settlement for the property involved; or
    b.  The actual cash value of the property at the time of loss; or
    c.  $1,000.

    A "designated person", as used in the coverage is the initial person chosen by a law enforcement agency who provided the necessary information that lead to either the arrest and conviction of the person who committed the arson, fraud or theft, or the return of the stolen property. However, a "designated person" cannot be:

    a.  An employee of a law enforcement agency;

**FI270AR (10/00) Page 5 of 8**
*//*FI270AR-200010

In Part, Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO®** "
Insurance Companies

POLICY    NUMBER

   **b.** An employee of a business responsible for the protection of property;
   **c.** A person who had custody of the property at the time of loss;
   **d.** A person involved in the arson, fraud or theft.

No reward will be granted until the person(s) alleged to having committed the arson, fraud or theft, have been convicted or the property returned.

## PART F - REPLACEMENT COST COVERAGE - PERSONAL PROPERTY

Loss Settlement provision **C. 1. a.** and **b.** is replaced by the following:

**A. Eligible Property**
   1. Covered losses to the following property are settled at replacement cost at the time of the loss:
      **a.** Coverage **C**, Personal Property; and
      **b.** If covered in this policy:
         **(1)** Awnings, outdoor antennas and outdoor equipment; and
         **(2)** Carpeting and household appliances;
         whether or not attached to buildings.

   2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:
      **a.** Jewelry;
      **b.** Furs and garments:
         **(1)** Trimmed with fur; or
         **(2)** Consisting principally of fur;
      **c.** Cameras, projection machines, films and related articles of equipment;
      **d.** Musical equipment and related articles of equipment;
      **e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:
         **(1)** Pens or pencils;
         **(2)** Flasks;
         **(3)** Smoking implements; or
         **(4)** Jewelry; and
      **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.
      **g.** Bicycles
      **h.** Guns (Fired)
      **i.** Sports Equipment

         Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**
   Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.
   1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.
   2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.
   3. Articles not maintained in good or workable condition.
   4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**
   The following loss settlement condition applies to all property described in **A.** above:
   1. We will pay no more than the least of the following amounts:
      **a.** Replacement cost at the time of loss without deduction for depreciation;
      **b.** The full cost of repair at the time of loss;
      **c.** The limit of liability that applies to Coverage **C**, if applicable;
      **d.** Any applicable special limits of liability stated in this policy; or
      **e.** For loss to any item described in **A.2.a - i.** above, the limit of liability that applies to the item.

In Part, Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO**
Insurance Companies

POLICY   NUMBER

2. If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

## SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A - DWELLING

### (APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)

The Additional Amount Of Insurance is determined by multiplying the Coverage **A** limit of liability shown in the Declarations by the percentage amount shown in this form or on the declarations page.
To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:
**A.** If you have:
1. Allowed us to adjust the Coverage **A** limit of liability and the premium in accordance with:
   **a.** The property evaluations we make; and
   **b.** Any increases in inflation; and

2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage **A** which increase the replacement cost of the building by 5% or more;
The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

**B.** If there is a loss to the building insured under Coverage **A** that exceeds the Coverage **A** limit of liability shown in the Declarations, for the purpose of settling that loss only:
1. We will provide an additional amount of insurance, up to 25% of the Coverage **A** limit of liability; and
2. Section I - Condition **C.** Loss Settlement Paragraph **2.** is deleted and replaced by Paragraphs **2., 3.,** and **4.** as follows:
   **2.** The building insured under Coverage **A** at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:
      **a.** The replacement cost of that part of the building damaged with material of like kind and quality and for like use;
      **b.** The necessary amount actually spent to repair or replace the damaged building; or
      **c.** The limit of liability under this policy that applies to the building, plus any additional amount provided by this endorsement.
   If the building is rebuilt at a new premises, the cost described in **a.** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.
   **3.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.
   **4.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.
All other provisions of this policy apply.

## PART G - MODIFICATIONS TO SECTION II - LIABILITY COVERAGES

### GOLF CART LIABILITY

**SECTION II - EXCLUSIONS**
**Section II, Exclusion A., "Motor Vehicle Liability"** is amended as follows: Item **e., (3)** is added:
   **(3)** a motorized golf cart while used as transportation to and from a golf course on other than public roads, including incidental or necessary use of public roads as access to and from a golf course.

**FI270AR (10/00) Page 7 of 8**
*//*FI270AR-200010

In Part, Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO**°
Insurance Companies

POLICY NUMBER

## INCIDENTAL LOW POWER RECREATIONAL MOTOR VEHICLE

**DEFINITIONS**

With respect to a "motor vehicle" covered by this endorsement, Definition **5.** which defines "Insured" is extended to include any person or organization legally responsible for the covered "motor vehicle" owned by an "insured". Definition **5.**, however, does not include a person or organization using or having custody or possession of the "motor vehicle" without the permission of the owner.

**SECTION II - EXCLUSIONS**

Paragraph **A.2.d.** is deleted and replaced by the following:
**d.** Designed for recreational use off public roads and:
    (1) Not owned by an "insured"; or
    (2) Owned by an "insured" provided the "occurrence" takes place:
        (a) On an "insured location" as defined in Definitions **B.6.a, b., d., e.** or **h.;** or
        (b) Off an "insured location" but only if the "motor vehicle":
            (i) Was not built or modified after manufacture to exceed a speed of 15 miles per hour on level ground; or
            (ii) Is not a motorized bicycle, moped or motorized golf cart, regardless of its speed capability.
All other provisions of this policy apply.

### SERVICE VEHICLE COVERAGE

Under **Section II, "Motor Vehicle Liability"**, exclusion **A. 2. b.** is deleted and replaced by the following:
**A.2.b.** Used to service an "insured's" residence. However, this exception does not apply to "recreational motor vehicles" unless used solely to service the "residence premises."

A "recreational motor vehicle" as used in this provision is one of the following:
    **a.** All-terrain vehicle;
    **b.** Dune buggy;
    **c.** Golf cart;
    **d.** Snowmobile; or
    **e.** Any other motorized land vehicle that is designed for recreational use off public roads.

### OUTBOARD MOTOR LIABILITY

**SECTION II - EXCLUSIONS**. Pertaining to "Watercraft Liability" Item **B.2.c.(2)** is replaced by the following:
  (2) One or more outboard engines or motors with:
    (a) 75 total horsepower or less;
    (b) More than 75 horsepower if the outboard engine or motor is not owned by an "insured";
    (c) More than 75 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or
    (d) More than 75 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:
        (i) You declare them at policy inception; or
        (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.
    The coverages in (c) and (d) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

### WATERBED LIABILITY

**SECTION II - EXCLUSIONS,** Exclusion **F. 3.** Is deleted and replaced by the following:
"Property damage" to property rented to, occupied or used by or in the care of an "insured." This exclusion does not apply to "property damage" caused by fire, smoke, or explosion, or by accidental discharge of water from a waterbed.

## PART H, SECTION II ADDITIONAL COVERAGE

### LOSS ASSESSMENT

**SECTION II, ADDITIONAL COVERAGE D.,** Loss Assessment remains unchanged except the limit of liability is increased to $5,000.

**FI270AR (10/00) Page 8 of 8**
•//•FI270AR-200010
In Part, Copyright, Insurance Services Office, Inc., 1999

**STATE AUTO°** "
Insurance Companies

POLICY   NUMBER

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER BACK UP AND SUMP DISCHARGE OR OVERFLOW
# THIS ENDORSEMENT HAS A WAITING PERIOD. SEE ITEM E.

### A. Coverage

We insure, up to limits shown on the declarations page, for direct physical loss, not caused by the negligence of an "insured" to property covered under Section I, caused by water, or waterborne material, which:

1. Backs up through sewers or drains; or
2. Overflows or is discharged from a:
   a. Sump, sump pump; or
   b. Related equipment;
   even if such overflow or discharge results from mechanical breakdown. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not increase the limits of liability for Coverages A, B, C or D stated in the Declarations.

### B. Section I - Perils Insured Against

With respect to the coverage described in **A.** above, Paragraphs:

**A.2.c.(6)(b)** in Form HO 00 03;
**A.2.e.(2)** in Form HO 00 05;
**2.j.(2)** in Endorsement HO 05 24;
**3.j.(2)** in Endorsement HO 17 31; and
**2.c.(6)(b)** in Endorsement HO 17 32;
are replaced by the following:
Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself.

### C. Special Deductible

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement.

We will pay only that part of the total of all loss payable under Section I that exceeds $500. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage D - Loss of Use.

### D. Exclusion

The **Water Damage** exclusion is replaced by the following:

**Water**

This means:

1. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
2. Water which:
   (a) Backs up through sewers or drains;
   (b) Overflows or is otherwise discharged from a sump, sump pump or related equipment;
   as a direct or indirect result of flood; or
3. Water below the surface of the ground, including water which:
   (1) exerts pressure on; or
   (2) seeps, leaks or flows through;
   a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or;
4. Waterborne material carried or otherwise moved by any of the water referred to in **D.1.** through **D.3.** of this Exclusion.

This Exclusion applies regardless of whether any of the above in **D.1.** through **D.4.**, is caused by an act of nature or is otherwise caused.

This Exclusion applies to, but is not limited to escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **D.1.** through **D.4.** is covered.

### E. Section I - Conditions

The following additional condition applies to coverage provided by this endorsement.

**Waiting Period.**

Coverage provided by this endorsement does not take effect until 15 days after the effective date of this endorsement for which a premium is indicated in the declarations. The waiting period does not apply at any other time or policy period while this coverage is maintained without interruption.

All other provisions of this policy apply.

FI0495 (01/09)
*//*FI0495-200901

Insurance Services Office, Inc., 2008

**STATE AUTO®** ''
Insurance Companies

POLICY   NUMBER

THIS ENDORSEMENT DOES **NOT** CONSTITUE A REDUCTION OF COVERAGE.

**NO** SECTION II - LIABILITY COVERAGES FOR
HOME DAY CARE BUSINESS
**LIMITED** SECTION I - PROPERTY COVERAGES FOR
HOME DAY CARE BUSINESS

A. "Business", as defined in the policy, means:
   1. A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or
   2. Any other activity engaged in for money or other compensation, except the following:
      a. One or more activities:
         (1) Not described in **b.** through **d.** below; and
         (2) For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;
      b. Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;
      c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or
      d. The rendering of home day care services to a relative of an "insured".
B. If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".
C. If home day care service is not a given "insured's" trade, profession or occupation but is an activity:
   1. That an "insured" engages in for money or other compensation; and
   2. From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;
   the home day care service and other activity will be considered a "business".

D. With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:
   1. Described in **A.2.** above, and
   2. Engaged in for money by a single "insured"; may be considered a "business" if the $2000 threshold is exceeded.
E. With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:
   1. Does not provide:
      a. Section II coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section II - Exclusions;
      b. Coverage, under Section I, for other structures from which any "business" is conducted; and
   2. Limits Section I coverage, under Coverage **C** - Special Limits of Liability, for "business" property:
      a. On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (e. in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";
      b. Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (f. in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (g. and **h.** respectively in Form **HO 00 08**).

HO0496 (10/00)
*//*HO0496-200010

Copyright, Insurance Services Office, Inc., 1999

ÙÀ×õÜä@ÁõÃ

MOBDEC08  HAR 0031589 01 20100712  WFS LATT HP 'R    03 INSU0001587 072012

**STATE AUTO**®
Insurance Companies

RENEWAL DECLARATIONS
HOMEOWNERS POLICY

THIS DECLARATIONS PAGE WITH POLICY FORMS AND ENDORSEMENTS COMPLETES
THE POLICY.   THIS POLICY WILL CONTINUE IN FORCE FOR THE PERIOD
INDICATED UPON VALID PAYMENT OF THE PREMIUM, WHEN DUE.

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE FOLLOWING COMPANY | AGENCY | PROD |
|---|---|---|---|---|---|
| | FROM | TO | | | |
| HAR 0031589 | 08/18/10 | 08/18/11 | STATE AUTO PROP. & CAS. | 1587 | 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| RAY LATTURE<br>799 SHILOH RD<br>BEEBE AR  72012 | INSURANCE MART INC<br>PO BOX 8<br>JACKSONVILLE AR  72078<br><br>TELEPHONE 501/982-1505 |

DESCRIPTION OF ADDITIONAL COVERAGES/CREDITS/DEDUCTIBLES

$1000 SECTION I LOSS DEDUCTIBLE APPLIES. THIS SECTION I
DEDUCTIBLE DOES NOT REPLACE, OVERRIDE NOR WAIVE ANY PERIL OR
COVERAGE SPECIFIC HOMEOWNERS DEDUCTIBLE. SEE ADDITIONAL
COVERAGE ENDORSEMENT(S) FOR COVERAGE DEDUCTIBLES.

PROTECTIVE DEVICE DESCRIPTIONS
 BURGLARY &/OR FIRE LOCAL ALARM SYSTEM INCL UL APPVD SMOKE DETECTOR DEVICES.

SOLID FUEL HEATING DEVICE
 TYPE IS FIREPLACE.

WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW
 DEDUCTIBLE AMOUNT IS $500
 AMOUNT OF LIABILITY IS $ 5000.

02/03/2012  15:04    2708525219          JACK DICKENS          **EXHIBIT** 2          PAGE 01/12

 **STATE AUTO**
Insurance Companies          **SWORN STATEMENT IN PROOF OF LOSS**

$457,060.00
Amount of Policy at Time of Loss

08/18/2010
Date Issued

08/18/2011
Date Expires

HAR 0031589
Policy Number

JACKSONVILLE AR
Agency Location

INSURANCE MART INC
Agent

To the STATE AUTO PROPERTY & CASUALTY INSURANCE CO: At time of loss, by the above indicated policy of insurance you insured (enter name of insureds here): RAY LATTURE against loss by to the property described under Schedule A, according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

1. **Time and Origin:** A loss by (state kind)  occurred on  about the hour of  M.
   The cause and origin of the said loss were:  Fire  7-24-11  10-12 P.M.

2. **Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever:
   Dwelling
   (list all uses of building - e.g. dwelling, warehouse, etc.)

3. **Title and Interest:** At the time of the loss the interest of your insured in the property described therein was:
   Owner
   (owner? lessee? etc.)

   No other person or persons had any interest therein or incumbrance thereon, except:
   First Security Bank — Beebe AR
   (list mortgagees, loss payees, etc.)

4. **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except:
   None
   (list any such changes here)

5. **Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, $, as more particularly specified in the apportionment attached under Schedule "C," besides which there was no policy or other contract of insurance, written or oral, valid or invalid. (Other applicable insurance must be listed on the other side of this form.)

6. **THE ACTUAL CASH VALUE** of said property at time of loss or damage was:    $340,050

7. **THE ACTUAL AMOUNT OF LOSS AND DAMAGE** as described above was:    $429,642.25

8. **THE AMOUNT CLAIMED** under the above numbered policy (after deductible, other insurance) is: $406,789.04

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered as part of this proof.

In consideration of the payment to be made hereunder, the insured does hereby subrogate to said insurer all right, title and interest in and to the property for which claim is being made hereunder, and agrees to immediately notify said insurer in case of any recovery of the property for which claim be being made hereunder, and will render all assistance possible in any endeavor to recover said property. Insured also agrees to turn over to said insurer, any such recovery which may be made, or reimburse said insurer in full to the extent of the payment for such property which may be recovered.

The furnishing of this blank or the preparation of proof by a representative of the above insurance company is not a waiver of any of its rights.

State of  Arkansas                          Insured  Ray Latture

County of  Prairie                          Insured

Subscribed and sworn to before me this

Denise Thornton                    DENISE THORNTON
Notary Public                      NOTARY PUBLIC-STATE OF ARKANSAS
                                   PRAIRIE COUNTY
                                   My Commission Expires 02-24-2019
                                   Commission # 12370176

Page 1 of 2
XCR610(0196)8

02/03/2012  15:04    2708525219                JACK DICKENS                        PAGE  02/12

### SCHEDULE A - POLICY FORM

CF-610b (01/96)

Policy Form Number: HO0003                    Effective Date: 08/18/2010

Item 1. $217,600.00   on (describe property) Dwelling
Item 2. $21,760.00    on (describe property) Other Structures
Item 3. $152,320      on (describe property) Personal Property
Item 4. $65,280.00    on (describe property) Loff Of Use

Situated: 799 Shiloh Road, Beebe, AR 72012

Coinsurance, Average, Distribution, or Deductible Clauses, if any: 80%

Loss, if any, payable to (mortgagees, etc., named on policy): First Security Bank

### SCHEDULE B
#### STATEMENT OF ACTUAL CASH VALUE AND LOSS AND DAMAGE

| ITEM NO | ITEM | REPLACEMENT COST | ACTUAL CASH VALUE (AT TIME OF LOSS) | LOSS AND DAMAGE AMOUNT |
|---|---|---|---|---|
| 1 | Dwelling | $318,653.31 | $274,646.46 | $318,653.31 |
| 3 | Personal Property | $101,989.04 | $65,403.54 | $101,989.04 |
| 4 | Loss of Use | | $32,800.— | $32,800 |
| | | | | |
| | | | | |
| | | | | |
| Totals: | | | $372,850.00 | $453,442.35 |

### SCHEDULE C - APPORTIONMENT (list all other companies that insured the property)

| POLICY NO | EXPIRES | NAME OF COMPANY | ITEM NO ___ | | ITEM NO ___ | |
|---|---|---|---|---|---|---|
| | | | INSURES | PAYS | INSURES | PAYS |
| | | None | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Totals: | | | | | | |

### RECEIPT FOR PAYMENT

Received of  Dollars ($) in full satisfaction for all claims and indemnity for all claims and demands upon said company on account of said loss and damage and the said policy is hereby .

1-31-12
(Date)

_Ray Latture_
(Insured's Signature)

Ray Latture
(Insured's Name - Print)

1/31/12
(Date)

(Mortgagee's Signature)

Page 2 of 2
XCR610(0196)E

PAGE 03/12

JACK DICKENS

2708525219

02/03/2012  15:04

 PRIORITY MAIL
UNITED STATES POSTAL SERVICE

Flat Rate

Apply Prio

 CERTIFIED MAIL



7011 1570 0000 4722 2044

 UNITED STATES POSTAL SERVICE

 1006

 42302

 U.S. POSTAGE
PAID
BEEBE, AR
72012
FEB 01, '12
AMOUNT

$10.00
00015579-01

2-3-12

EP14H JAN 2011  Outer Dimension: 10 x 5